# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-60910-BLOOM/Valle

MATRIX ADVERTISING, LLC,

    Plaintiff,

v.

CHARLES A. GILMAN, ESQ. and
GILMAN & BEDIGIAN, LLC,

    Defendants.
_____/

## ORDER ON MOTION TO REMAND

**THIS CAUSE** is before the Court upon Plaintiff Matrix Advertising, LLC's ("Plaintiff") Motion to Remand to State Court. ECF No. [8] ("Motion"). Defendants Charles A. Gilman, Esq. and Gilman & Bedigian, LLC (collectively, "Defendants") filed a Response in Opposition to the Motion, ECF No. [14] ("Response"), to which Plaintiff replied, ECF No. [15] ("Reply"). The Court has carefully reviewed the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

### I. BACKGROUND

Plaintiff originally filed this action on October 23, 2020, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida. ECF No. [1-1] at 2-25. Defendants were served on November 5, 2020. On November 20, 2020, Plaintiff filed a First Amended Complaint. *Id.* at 33-84. Defendants subsequently removed the case to federal court on November 30, 2020. *See Matrix Advertising, LLC v. Gilman*, No. 20-cv-62435-BB (S.D. Fla. Nov. 30, 2020) ("*Matrix I*"). On December 1, 2020, this Court *sua sponte* remanded *Matrix I* because

Defendants failed to establish that the amount in controversy requirement of diversity jurisdiction was met. *See Matrix I*, No. 20-cv-62435-BB (S.D. Fla. Dec. 1, 2020), ECF No. [3] ("Remand Order"). Following remand, on January 28, 2021, Plaintiff filed a Second Amended Complaint in state court. ECF No. [1-1] at 109-63.

On April 28, 2021, Defendants removed the state court action to federal court again on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. ECF No. [1] ("Notice"). In the Notice, Defendants represent that they received documents from Plaintiff on April 2, 2021, and April 6, 2021, which established that the amount in controversy in this case exceeds $75,000.00. *Id.* ¶¶ 12-20. On May 10, 2021, Plaintiff filed the instant Motion, arguing that remand is appropriate because the removal in this case was untimely. Plaintiff further seeks an award of attorneys' fees incurred during this removal pursuant to 28 U.S.C. § 1447(c). ECF No. [8]. Defendants take the opposing position.

**II. LEGAL STANDARD**

Removal is proper in "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). To establish original jurisdiction, a lawsuit must satisfy the jurisdictional prerequisites of either federal question jurisdiction, pursuant to 28 U.S.C. § 1331, or diversity jurisdiction, pursuant to 28 U.S.C. § 1332. Federal question jurisdiction exists when the civil action arises "under the Constitution, laws, or treaties of the United States." *Id.* § 1331. Diversity jurisdiction exists when the parties are citizens of different states, and the amount in controversy exceeds $75,000.00. *See id.* § 1332(a). A removing defendant bears the burden of showing that federal jurisdiction is proper. *Coffey v. Nationstar Mortg., LLC*, 994 F. Supp. 2d 1281, 1283 (S.D. Fla. 2014).

Moreover, a defendant must file the notice of removal within thirty days of being served with the initial pleading. 28 U.S.C. § 1446(b)(1). If an action is not initially removable, "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3).

"Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdiction requirement." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010); *see also* 28 U.S.C. § 1332(a). Further, in determining whether subject matter jurisdiction exists, the Court must focus on the amount in controversy *at the time of removal*, not at any later point. *Pretka*, 608 F.3d at 751 (citations omitted); *E.S.Y., Inc. v. Scottsdale Ins. Co.*, 217 F. Supp. 3d 1356, 1360 (S.D. Fla. 2015). "To determine whether this standard is met, a court first examines whether 'it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement.'" *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1330 (11th Cir. 2006) (quoting *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001)), *abrogated on other grounds by Dudley v. Eli Lilly & Co.*, 778 F.3d 909 (11th Cir. 2014). "If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." *Id.* (quoting *Williams*, 269 F.3d at 1319).

"Removal is a matter of federal right," but on a motion to remand, "ambiguities are generally construed against removal." *Butler v. Polk*, 592 F.2d 1293, 1296 (5th Cir. 1979);[1] *see*

---

[1] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981), the Court of Appeals for the Eleventh Circuit adopted as binding precedent the decisions of the Court of Appeals for the Fifth Circuit rendered prior to October 1, 1981.

*also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941). Nonetheless, "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka*, 608 F.3d at 754 (citations omitted). "Where, as in this case, the complaint alleges an unspecified amount of damages, 'the district court is not bound by the plaintiff's representations regarding its claim,' and may review the record for evidence relevant to the amount in controversy." *DO Rests., Inc. v. Aspen Specialty Ins. Co.*, 984 F. Supp. 2d 1342, 1344 (S.D. Fla. 2013) (citing *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010)). Moreover, "defendants may submit a wide range of evidence in order to satisfy the jurisdictional requirements of removal," including "affidavits, declarations, or other documentation." *Pretka*, 608 F.3d at 755. The Court may also use its judicial experience and make reasonable inferences and deductions to determine the amount in controversy. *See Roe*, 613 F.3d at 1061-62; *Pretka*, 608 F.3d at 754 (discussing the difference between reasonable deductions and inferences with "conjecture, speculation, or star gazing"); *E.S.Y., Inc.*, 217 F. Supp. 3d at 1360.

**III. DISCUSSION**

In the instant Motion, Plaintiff contends that removal was untimely because Defendants knew or should have known that the amount in controversy in this case exceeded $75,000.00 at least three months prior to removal based on the allegations in the Second Amended Complaint. Plaintiff also requests an award of attorneys' fees and costs incurred due to the removal pursuant to 28 U.S.C. § 1447(c). Defendants, however, argue that they were unable to ascertain the amount in controversy until April 2, 2021, when they received overdue invoices from Plaintiff for services rendered during November and December 2020, which supplemented the invoices attached to the Second Amended Complaint for services performed in September and October of 2020. According to Defendants, these invoices, along with the $135,000.00 Proposal for Settlement that Plaintiff

4

sent on April 6, 2021, conclusively established that the amount-in-controversy requirement was satisfied in this case. Notably, there is no dispute that complete diversity exists here, nor is there any dispute that the amount in controversy exceeds $75,000.00. Rather, the parties' disagreement centers solely on the timeliness of removal.

### A. Timeliness of Removal

"As to the timeliness of removal, Congress has established a bifurcated removal regime under which a state court defendant may remove a case to federal court at one of two procedurally distinct moments in time." *Scriptchek Visual Verification Sys., Inc. v. R.R. Donnelley & Sons Co.*, No. 20-cv-61261, 2021 WL 226095, at *2 (S.D. Fla. Jan. 22, 2021). Under § 1446(b),

> (1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
> . . . .
> (3) Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. §§ 1446(b)(1), (3).

"As construed by district courts in this Circuit, the 30-day removal period prescribed by § 1446(b) commences running as soon as a defendant is able to ascertain intelligently that the action is removable." *Scriptchek Visual Verification Sys., Inc.*, 2021 WL 226095, at *2 (quoting *Simpson v. Primerica Life Ins. Co.*, No. 2:16-cv-701-MHT-GMB, 2017 WL 2857699, at *5 (M.D. Ala. May 22, 2017)). Moreover, the time limit under § 1446(b) "is mandatory and must be strictly applied." *Clingan v. Celtic Life Ins. Co.*, 244 F. Supp. 2d 1298, 1302 (M.D. Ala. 2003).

In this case, the primary question raised by the parties is whether the 30-day clock began

to run from (1) the date that Plaintiff filed the Second Amended Complaint (i.e., January 28, 2021), or (2) the dates on which Defendants received the November and December 2020 invoices for past due amounts and the Proposal for Settlement (i.e., April 2, 2021, and April 6, 2021, respectively). As noted above, Plaintiff argues that it was apparent from the face of the Second Amended Complaint that the amount in controversy exceeded $75,000.00. Conversely, Defendants contend that this case was not removal until they received the additional invoices setting forth the exact amounts owed for services performed in November and December of 2020.

Upon review of the record, the Second Amended Complaint sufficiently alleged facts from which Defendants reasonably could have ascertained that the amount in controversy exceeded $75,000.00 and that this case was therefore removable. Indeed, while Plaintiff does not specify the exact amount of damages sought in the Second Amended Complaint, it clearly and repeatedly details the services Plaintiff performed that Defendants failed to pay and the time period during which those services were rendered. *See generally* ECF No. [1-1] at 109, ¶ 1; 127-28, ¶¶ 85-88; 132, ¶¶ 112-13; 137-38, ¶¶ 140-46. Specifically, Plaintiff seeks to recover damages for all unpaid services rendered from September 2020 through the termination of the parties' contract on December 31, 2020. *Id.* These unpaid amounts are based on commissions for monthly advertisement media placements during 2020, which Defendants requested, authorized, and repeatedly reviewed. *Id.* at 131, ¶¶ 103-04.

For example, the Second Amended Complaint lists three specific invoices: (1) an invoice for August 2020 for the amount of $25,955.57 that was fully paid on October 2, 2020; (2) an invoice for September 2020 for the amount of $25,788.20 that remains unpaid; and (3) an invoice for October 2020 for the amount of $24,922.63 that remains unpaid. *Id.* at 127-28, ¶¶ 83-88. In addition, the Second Amended Complaint explicitly states that Plaintiff seeks to recover all unpaid

amounts for services rendered until the expiration of the contract on December 31, 2020. *Id.* at 132, ¶¶ 112-13. Implicit in this requested relief is the recovery of all additional unpaid amounts for services performed during the contractual period beginning immediately after the October invoice and ending on when the contract terminated on December 31, 2020. Likewise, the correspondence attached to the Second Amended Complaint reveals the parties' mutual acknowledgement that Plaintiff was to continue performing media consultant services under the contract until its termination on December 31, 2020. *See generally id.* at 150-62. Thus, it is reasonably apparent from the Second Amended Complaint that Plaintiff not only seeks to recover damages for unpaid services performed between September 2020 and October 2020, but also for those services performed between November 2020 and December 31, 2020. *See Fettner v. Reed*, No. 16-cv-81118, 2016 WL 4035006, at *3 (S.D. Fla. July 28, 2016) ("[A] district court does not measure the amount in controversy by a plaintiff's statement of his minimal damage expectations, but rather by 'a reasonable reading of the value of the rights being litigated.'" (quoting *Roe*, 613 F.3d at 1063)).

Moreover, the nature and amounts of the prior invoices that are specifically identified in the Second Amended Complaint shed light on the likely amounts billed for similar services performed during November and December of 2020, which are based on Defendants' previously authorized monthly media placements. *See* ECF No. [1-1] at 127-28, ¶¶ 83-88. Consistent with the invoices from August to October, it can easily be inferred that the invoices for November and December will amount to approximately $25,000.00 per month, and these amounts are calculated based on Defendants' authorized media placements during those months. Accordingly, although no precise amount of damages is alleged, the Second Amended Complaint nevertheless sets forth adequate allegations describing the historical invoice amounts, including some invoices that

7

remain unpaid and overdue, the period of time during which Plaintiff performed such services pursuant to the parties' agreement, and Plaintiff's entitlement to damages for all unpaid services rendered between September 2020 to December 31, 2020. In light of the amounts billed in prior months for similar services, it is more likely than not that the invoices for November and December 2020 amount to approximately $25,000.00 per month as well. Further, when combined with the overdue invoice amounts from September and October 2020, the amount in controversy is substantially likely to exceed $100,000.00. As the parties do not dispute that complete diversity of citizenship exists, this approximate amount in controversy discerned from the Second Amended Complaint satisfies the remaining jurisdictional inquiry. This case became removable at the time that the Second Amended Complaint was filed on January 28, 2021.

Moreover, it is of little relevance that, on April 2 and April 6, 2021, Defendants received the actual invoices for services performed in November and December 2020, which amounted to $33,377.11 and $27,331.99, respectively, ECF No. [1-2], along with Plaintiff's Proposal for Settlement in the amount of $135,000.00, ECF No. [1-3], because these "other papers" simply confirm and reinforce the amount of damages for unpaid services that can be discerned from the Second Amended Complaint. Contrary to Defendants' argument, these subsequent documents did not present any new facts that would allow Defendants to ascertain, in the first instance, that the case was removable. Such facts relating to the amount in controversy should have already been apparent to Defendants by virtue of the Second Amended Complaint, and the additional documents obtained in April 2021 only serve to bolster the already-apparent removability of this action.[2] *See*

---

[2] Indeed, the Court is skeptical of Defendants' representation that they did not receive any billing invoices for November or December until April 2, 2021. Not only did the parties perform under the contract for approximately eight years before this disagreement arose, but they also seemingly used the same billing procedures throughout that time. In particular, Defendants would receive invoices directly from the media companies for Defendants' advertisement placements. Additionally, Plaintiff would send Defendants monthly invoices for the fees and commissions it earned, along with monthly media audits. *See* ECF No.

*Owoc v. LoanCare, LLC*, No. 20-cv-60805, 2021 WL 935311, at *6 (S.D. Fla. Mar. 8, 2021) ("Here, Defendant already had in its possession the very information it claims to have received for the first time in the Amended Interrogatory Answer No. 17. The Original Interrogatory Answer No. 17 and the Amended Interrogatory Answer No. 17 are materially identical . . . . Without even addressing whether Plaintiff's theory on damages has remained consistent since it filed the Complaint, Defendant had knowledge of Plaintiff's theory on damages since no later than January 31, 2020. Defendant cannot base the timing of removal on information allegedly obtained for the first time when it legally possessed that information at an earlier date."); *see also Capitini v. Balfour*, No. 18-cv-81324, 2019 WL 587180, at *2 (S.D. Fla. Jan. 18, 2019) ("Here, the Court

---

[1-1] at 142-43. Defendants also acknowledge receiving prior months' invoices, *see* ECF No. [1-2] at 3, and have paid the amounts owed in the past, *see* ECF No. [1-1] at 127, ¶ 84. Nevertheless, Defendants offer no explanation as to why similar invoices were not received, either from Plaintiff or from the media companies that placed Defendants' advertisements, during the months of November and December 2020. Nor do Defendants challenge the representation that Plaintiff continued to perform services under the contract during the months of November and December.

The Defendants contend that they were unaware as to the amounts owed for services performed in November and December 2020. However, as alleged: (1) they demanded that Plaintiff continue to perform these services until the termination of the contract on December 31, 2021, (2) they had explicit knowledge of the services being offered and advertisements being run, and (3) they authorized regular monthly media authorizations for ad placements. As such, the statement that Defendants lacked the necessary information to ascertain the amounts owed for services performed in November and December 2020 is not supported by the underlying facts of this case. *See Scriptchek Visual Verification Sys., Inc.*, 2021 WL 226095, at *5 (concluding that the later-discovered paper "did not provide Defendant with any information it did not already possess"); *see also Westerburger v. Geovera Specialty Ins. Co.*, No. 19-cv-60870, 2019 WL 7708493, at *2 (S.D. Fla. May 23, 2019) ("[A] defendant should not be allowed to delay removing when he knows the facts necessary for removal, as the purpose of the statute is to extend the time limit only when a defendant cannot ascertain removability."); *Simpson*, 2017 WL 2857699, at *7 (removal improper where "[t]he 'other paper' that forms the basis of Defendants' § 1446(b)(3) removal . . . does not provide Defendants with information about the amount in controversy from which they first ascertained that federal subject-matter jurisdiction exists. These answers only confirmed what Defendants already knew, or at least should have known, since the filing of the complaint."); *Advantage Med. Elecs., LLC v. Mid-Continent Cas. Co.*, No. 14-0045-CG-N, 2014 WL 1764483, at *6 (S.D. Ala. May 5, 2014) ("The proper inquiry [under 28 U.S.C. § 1446(b)(3)] is, [] what is conveyed by [the 'other paper'] . . . as to the amount in controversy that [defendant] did not know before their receipt? And does that previously unknown information unambiguously establish the requisite minimum amount in controversy?"); *Holloway v. Morrow*, No. 07-0839-WS-M, 2008 WL 401305, at *3 n.4 (S.D. Ala. Feb. 11, 2008) ("[A] defendant cannot piggyback the § 1446(b) 30-day period on receipt of discovery responses containing information that it already possessed.").

does not see why Defendant should be permitted to rely on its apparent willful blindness to extend the removal deadline by six months in this case. Defendants had notice on the date the First Amended Complaint was served that the amount in controversy greatly exceeded $75,000. Accordingly, Defendants' Notice of Removal is untimely."); *cf. MSPA Claims 1, LLC v. Allstate Ins. Co.*, No. 16-cv-21148, 2016 WL 11214705, at *2 (S.D. Fla. July 7, 2016) ("The parties agree that the initial pleading *was* removable, although Allstate chose not to remove it. Thus, the second amended complaint was not a document from which 'it may *first* be ascertained that the case is one which is or has become removable' within the meaning of § 1446(b)(3)."). Here, Defendants were required to file their notice of removal within thirty days of January 28, 2021—the date on which Plaintiff filed its Second Amended Complaint—and Defendants' failure to remove the case by February 27, 2021, rendered the removal in this case untimely.

Based on the allegations and claims asserted in the Second Amended Complaint that establish the amount in controversy requirement for diversity jurisdiction, Defendants were required to file their notice of removal within thirty days of January 28, 2021—the date on which Plaintiff filed its Second Amended Complaint—and Defendants' failure to do so by February 27, 2021, rendered the removal improper. Defendants removed this action on April 28, 2021. As such, Defendants' removal was untimely, and this case must be remanded back to state court.

### B. Attorneys' Fees as Result of Removal

Plaintiff also requests attorneys' fees pursuant to 28 U.S.C. § 1447(c), which states that

> [a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

28 U.S.C. § 1447(c).

"The standard for awarding fees should turn on the reasonableness of the removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). The United States Supreme Court has explained that courts are generally permitted to award attorney's fees under 28 U.S.C. § 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied. In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case." *Id.* (citations omitted). "When a court exercises its discretion in this manner, however, its reasons for departing from the general rule should be 'faithful to the purposes' of awarding fees under § 1447(c)." *Id.*; *see also Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 196, n.8 (1995) ("[A]s is always the case when an issue is committed to judicial discretion, the judge's decision must be supported by a circumstance that has relevance to the issue at hand"). "The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Martin*, 546 U.S. at 141.

The record supports the conclusion that it was not objectively unreasonable for Defendants to believe that the amount in controversy requirement was established upon receipt of the November and December invoices. Rather, Defendants' removal, while untimely, demonstrates a cautious approach to exercising their right of removal. Thus, "[Defendants'] position, that this case was removable only after obtaining further confirmation . . . that the amount in controversy was met, was not objectively unreasonable." *Punales v. Hartford Ins. Co. of Midwest*, No. 1:18-cv-25445, 2019 WL 3369104, at *4 (S.D. Fla. July 26, 2019). Plaintiff's request for attorneys' fees

and costs under § 1447(c) is therefore denied.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion, **ECF No. [8]**, is **GRANTED**.

2. This case is **REMANDED** to the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.

3. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

4. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 6, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record